May it please the Court, my name is Dana Levitt for McDermott, Will & Emory. I represent the Thomas Kinkade Company, the appellant in this action, which is the successor in interest to Media Arts Group, Inc., who was the claimant in the arbitration below. Counsel, let me just start by asking you a question. Yes, Your Honor. It seems to me that your argument, in essence, is this. Mr. Kayne submitted the jurisdiction of the arbitrator to determine arbitrability by objecting to the arbitrator's jurisdiction over that issue. Isn't that the sum and substance of your argument? No, Your Honor. Our argument is, in fact, that Mr. Kayne did not object to the authority of the panel to decide the issue. What do the words mean that he said then? If that's not an objection, what do they mean? What they mean is, it's a proffer to the panel, if I may, Your Honor. What Mr. Kayne is saying to the panel is, and these, I think, are his exact words, I am not liable, I am not responsible, and I'm not obligated, because I didn't sign the agreements in my individual capacity, and I rely on the fiduciary shield doctrine.   Well, he's asking the panel to determine if he never entered into an agreement. You don't get anywhere when you change the words. You try to move six degrees of separation. He says they never entered into any agreement, not that they didn't sign anything. Is your position that, I mean, you're not seriously arguing that Mr. Kayne actually entered into this agreement personally, are you? The dealer agreement, you mean. No, I'm not seriously arguing that. So all Mr. Kayne said was, hey, you know, this isn't my agreement. I'm not a party to this agreement. What more could he say at that point? He could say what he wants. And by the way, isn't he under the Supreme Court decision in first options? He's allowed to also argue in the alternative. He can say, you don't have jurisdiction over me, but if you're going to assert it, here's my position, without giving up his jurisdictional argument. Well, Your Honor, contrast what Mr. Kayne said with what Mr. Kaplan in the first options case said. In the first options case, according to the Supreme Court, Mr. Kaplan submitted a separate memorandum to the panel in which he said, you have no jurisdiction, quote, no jurisdiction to decide this issue. But aren't we now talking about magic words? I mean, don't we have to look just to the substance of what the fellow is saying and attempting to communicate in a reasonable way? I mean, it just seems to me that he's saying, I didn't sign the document. I'm not a party to the agreement. I'm not liable on any of this, which I think adds up to, you know, you can't decide it. But, Your Honor, look at what the district court said in this case. The district court said that the two sentences in the answering statement upon which Mr. Kayne relies was both an effort on Mr. Kayne's part to meet the merits of whether or not he was personally liable, as well as, according to the district court, an objection to jurisdiction. So in other words, the first option says you can do. Well, but again, Mr. Kaplan was quite clear. He didn't say, decide in my favor that I shouldn't be liable under these circumstances. Mr. Kaplan said, you don't have the power to decide this issue. And that's what Mr. Kayne should have said. Under George Day construction, Mr. Kayne should have said, you do not have the power to decide this issue, or you don't have the authority to decide this issue. In fact, that's the language that the Ninth Circuit used in the George Day construction case, object to the decision. Yes, Your Honor. Counsel, what is so unfair about the result here, regardless of whether or not the magic words were used? What's unfair about the result, Your Honor, is if you look at the record, it's clear that in the run-up to the arbitration, in the arbitration itself, and up to the point when the panel wrote the final award, nobody in this case, not the litigants, not the panel, not Mr. Kayne, not the lawyers, no one thought that the question of whether or not the panel had authority to decide this issue was a live, real issue. I arbitrated that case. I was the lead counsel. It was not an issue in the case. And so what happened here is, it's not a situation as in George Day where the lawyer cynically waits on the sidelines, doesn't raise the jurisdictional issue until he loses on the merits. That's not what happened, because my able colleague, Mr. Coleman, came into the case late. He didn't arbitrate the case. What he did when he was hired, which is what every good lawyer does, he scoured the record and he came up with a new argument, an argument that was not raised. And what's wrong with that? Just clarify for me, when you say that everyone arbitrated this issue, what do you mean by this issue? The issue of whether or not Mr. Kayne was liable under the personal guarantee. I cross-examined him in the arbitration at length. The personal guarantee is an exhibit in the record. He, as Judge – as Justice Anderson, who wrote the majority opinion in the arbitration below, notes Mr. Kayne admitted under cross-examination that he had signed the document and admitted he understood what his obligations under the document were. So all of the time he was liable under cross-examination, but what's that got to do with jurisdiction? What does that have to do with jurisdiction ultimately? And if in the answering document the issue is raised and presented, which seems to me to be the case in terms of the document, at that point, is it your contention that they have to continually argue jurisdiction every time they stand up and vote? No, Your Honor. They have to contest jurisdiction? No, Your Honor, that is not our contention. I think the cases make it clear that if you stand up and you say you do not have the power to decide this issue, you do not have the authority, or you do not have the    And if you've come up with a document that you think is very similar, then you have saved yourself. And that's what George Day requires. But that's not what happened here. Well. And you can see it from the record. But George Day, you know, one of the things we have to keep in mind is that George Day is 11 years before first options. And to the extent that George Day is not consistent with the Supreme Court's decision in first option, first options controls, does it not? It would, Your Honor, except in our view, there is no contradiction between the two cases. First option is reserved for the situation, Your Honor, where someone comes in and clearly argues that there is no jurisdiction, clearly argues that there is no jurisdiction, and by doing that, runs the risk that the court or the panel may say, you submitted this issue to us for decision. And therefore, Justice Breyer says, you've got to do it in a clear and convincing way. Well, how is this different from Ralph Andrews, where he says, I am personally not a party to this case, which, again, is not saying, you know, you do not have jurisdiction, you do not have power. He's saying, I'm personally not a party. Isn't that, in some substance, what was said here? And wasn't that enough in Ralph Andrews to contest it? Your Honor, in some substance, it's not the same. And that's our point. Why? Because, for two reasons. First of all, the court in Ralph Andrews went out of its way to note that Mr. Andrews was not represented by a lawyer. Mr. Cain was represented by Archie Robinson, a well-known practitioner in the Bay Area, a very competent lawyer. He knew how to raise an objection to jurisdiction if that's what he wanted to do, but that was not his trial strategy. That's number one. And number two, there is a big difference between saying, I am not a party in this case, and doing what Mr. Cain did, which was say, I categorically deny any liability, any responsibility, or any obligation, and I rest on the fiduciary. And that I entered into any agreement, or that I entered into any agreement. In other words, he's asking the panel to decide, as a fact or a matter, that he didn't enter into an agreement, which would lead to personal liability. And that's the theory upon which the case was arbitrated. Back up for a second. Yes, Your Honor. How this whole thing started. What was the objective when arbitration was first conceived of? To arbitrate what? Well, you can tell by looking at the briefs that the issues that were raised were whether or not Mr. Cain's art galleries had purchased approximately $600,000 of art and paid for it. By the way, Mr. Cain had a number of claims over against the company, but those are really not relevant now. And, well, I guess they are relevant in a way. And secondly, whether or not Mr. Cain could be personally liable for that obligation, either because he signed the dealer agreement in his personal capacity, or because he signed the personal guarantee. Was that the way it was presented, or because he signed the personal guarantee? Because the personal guarantee seems to have a separate arbitrability clause. It does, Your Honor. It does, Your Honor. What I'm after is how did that become part of the case? Was it originally pleaded, if you want to use that characterization, the personal guarantee, or did that slide into the thing sideways? Well, it didn't. I won't. I believe that we did we filed a relatively informal claim to which Mr. Cain filed the relatively expansive claim. And the claim didn't relate to the personal guarantee, did it? Well, Your Honor, I have to say I don't know that, because I don't think the claim is even in the record. I don't know that. But I don't think it's accurate to say that it slid in sideways, because it is a subject of discussion in the reply arbitration brief before the arbitration even started. And if you look at Justice Anderson's opinion, let me just conclude on this, because I have only a few seconds. He is a retired intermediate California court of appeals justice. He is an able man. He wrote an eight-page, single-spaced opinion. He dealt with every one of Mr. Cain's claims, and he explained exhaustively why they didn't work. If he thought that he didn't have the power or that there was a question of whether he had the authority to reach this issue, he would have said something. Yeah, well, he seemed to. I mean, we just have to say, well, he must have thought he did. Therefore, the three of us should just say, well, okay, well, if he thought so, then I guess it must be so, and not review the question at all. I mean, the district court, I would say in response to that, the district court judge spent a lot of time looking at this, and he didn't think he did, and that's what we're here to decide, is whether or not the district court, in its determination, as to whether or not that issue was even properly before the arbitrator. If the answering statement that Mr. Cain put forward satisfies George Day, then I think the court effectively will have to overrule George Day, because that's not what that case says. That case says you cannot wait to test jurisdiction until after you've lost the case on the merits, and that's what happened here. He argued whether or not he should be liable under the personal guarantee, and he lost, and he got a new lawyer who scoured the record and found a new argument, just as he should have. Well, I guess my problem is the problem that Judge Trott has highlighted, which is we talk about the arbitration which is brought under the dealer agreement and then somehow on the side, sort of around the end, comes this personal guarantee question, and that somehow gets in the mix as the basis for concluding that he conceded jurisdiction under the arbitration clause of the dealer agreement. And I'm not sure that those – I think you're conflating the two in a sense. I don't think that necessarily works. Your Honor, if I may, we concede that if we had made a motion to make a deal with George Day, if we had made a motion to compel Mr. King to address the issue of his liability under the personal guarantee by reference to the arbitration clause in the dealer agreement, we would have lost. We would have lost. That's not our argument. Our argument is he didn't object, he consented. There was a 10-day arbitration in which the issue of his liability under the personal guarantee was exhaustively litigated. He was cross-examined on it. George Day stands for the proposition that litigants ought not to get two bites at the apple, and that's what he's got here. He didn't object. But he could have been cross-examined and called as a witness whether or not he conceded to jurisdiction over claims with respect to him. And secondly, and as in first options, he was going to be there anyway because he had to be, because essentially it's his company that is involved in the arbitration. So I'm not sure that his mere presence and participation itself is enough. I agree with that, because I think that that's what Ralph Andrews stands for. If you're just there because your company is there, that's not enough. That's not our argument. Our argument is that he's not only there, but he didn't object, and further, that he was a party to the counterclaims against my client. And you can tell that because the misrepresentation and the fraud claims that are raised by Mr. Cain, which are described in the answering statement, half of them arose out of facts, out of situations that occurred before he was ever, before he ever formed a corporation. So unless there was an assignment of his claims to his corporation, and there's nothing in the record to indicate that, he didn't even have standing to raise those claims, but he was there arguing that he should be personally liable. Look at the fact that Justice Anderson went out of his way to exonerate Mrs. Cain, his wife, against whom we had also brought claims. And he said there's no evidence that Mrs. Cain is personally liable. But there was evidence that Mr. Cain was. And he didn't – the real point is he didn't dispute it. He did not follow what's required under George Day construction. Thank you, Your Honor. Roberts. Thank you, counsel. Thank you, Court. Good morning. Charles Coleman from Holland and Knight for the appellee, David Cain. I'd like to just address a couple of the points that were mentioned in the argument just concluded. First of all, with respect to what's in the record, we believe that the thing to focus on is the record before the district judge and not things that were not before the district judge that might have been covered in the arbitration. I would note that the – it's undisputed that the – with respect to this backdoor aspect of the guarantee under the letter of extension of credit, that that was not part of the arbitration demand initially made. And that's set out in Mr. Cain's declaration submitted to Judge Ilston. So it started out on the dealer agreement only. Yes. That's quite right. And that's undisputed. That's in the record before Judge Ilston. It appears in Mr. Cain's declaration, which is in the excerpts of record three at page 53. Was Mr. Cain responsible for injecting it into the arbitration proceedings? And if that were the case, you know, maybe he did concede to jurisdiction if he did  What do you say to that argument? What I'd say is there's no evidence that I'm aware of that Mr. Cain injected it. I understand that that may have been marked at some point later on as an exhibit. He certainly was not making a claim under – with respect to that. It was presented, as I understand it, by the other side. And it's undisputed in his declaration submitted to the district court. Did they add that to their case? You know, I understand that the arbitration demand is informal. Was that added to the case as the proceedings went on as part of the litigation? And was that information before the district court when the district court ruled on the motion to vacate? Judge Pease, I know only the second part of that question because I wasn't present during the arbitration. And the record that I'm aware of is the one before the district court. I have some understanding of what was before the arbitration. And my impression was that there was an Exhibit 64 put in during the course of it. But I should not be speaking about what happened because I wasn't present. You can sure tell what happened by looking at this. It says claimant seeks to hold respondent blah, blah, blah, personally liable on the demand. And then they say David Cain signed a personal guarantee in applying for a greater amount of credit. See Exhibit 76. Verified his signature on cross-examination and admitted he now understands this obligation. So it looks like the whole thing became, by operation of something, part and parcel of what they were arguing about. That happened when the arbitral decision was made, but there was no effort at any time to invoke the separate arbitral procedures under that agreement. And the arbitration demand itself didn't do that. So there's, we believe, a disconnect between the arbitrator's authority. They had no authority to arbitrate that issue. And Mr. Cain objected very clearly in his answering statement on that subject. This case reminds me of a law school classroom where you posit a certain set of facts and then you take a look at the cases and it becomes pretty clear that that's X. And then you move the facts over just a little bit. Well, that's still close enough to what you had in the first place. And now here we're in another situation where the objection is less clear than it has been in the previous cases. You know, it looks like we're on a slippery slope here. You will agree that the words here weren't as clear as the words in the other cases. Well, they were different than what was in the other cases. I would submit respectfully that in addition to saying that he never entered into any agreement individually with claimant, that seems fairly clear to us. It goes on to say, and this is in the ---- Well, didn't he, isn't it a fact that they did enter into an agreement individually with a claimant? That's the personal guarantee and that's what came into the case? Well, actually that is disputed. There was an application filled out. The undisputed evidence submitted to the district court was that that application for credit was never accepted. So there's, in fact, a real question as to whether the application for credit includes within it any agreement to arbitrate. But if it did, as Judge Yelston said, that was a separate agreement. So that was never invoked by the appellants here. So, counsel, let me see if I understand then. Is it your position that the arbitration in this case was instituted under the terms and conditions of the dealer agreement, that the arbitration then proceeded under the dealer agreement, and that during the course of those proceedings the question of individual responsibility became injected into the case, you say over your client's objections, and ultimately was resolved? But over objections, is that your position? Certainly that's our position with respect to injecting the financial guarantee. Clearly in the answering statement there was an objection to any liability or duties arising under the art gallery agreement, which is the one that the arbitrators had jurisdiction over. So, in essence, yes. Counsel? Yes, Judge Roeder. I'm looking at page five of Judge Yelston's decision. She says defendants in their answering statement objected to the arbitrator's authority by asserting that, quote, Respondents David and Tracy Cain categorically deny any liability, responsibility, or obligation to claimant in their individual capacity because they have never entered into any agreement individually with claimant. At all pertinent times they acted only in a corporate capacity as to claimant and are entitled to the fiduciary shield doctrine therein. Is that, and then the district court goes on and says this statement is not only a defense against liability, but also an assertion that the Cains object to the arbitration panel's authority. Is that, and then after this statement Cain proceeded to argue the merits, which is the proper procedure under George Day. Is that essentially your position? Yes. And that is a correct statement of what happened in this record and what is required under the law in your view? Yes, as long as we focus on the merits that we're talking about. We're not talking about the merits of the arbitrability issue. We're talking about the merits of the underlying dispute. And we believe that's under first options. Tier one. Tier one under first options. Yes. Right. You see, I think this can easily be read as just simply a denial of the merits and a denial of any effect of the personal guarantee. He's saying, you know, we deny liability because we never entered into any agreement individually with the claimant. Well, that's how the personal guarantee gets in there because apparently they did enter into some kind of a personal, or at least arguable, and now he's disputing that. So it seems that this is bringing in the personal guarantee by saying we didn't enter in any agreement and therefore we're not liability because we acted only in a corporate capacity. And the other side says, wait a minute, you signed a personal guarantee. Well, the answering statement was in response to the arbitration demand, and it's clear in the record that the arbitration demand to which this answering statement was responding did not make any reference to the personal guarantee. But he does. Not in this document. Well, entered into any agreement individually with claimant. Then you get into the brawl, and on the basis of an agreement entered into, that's the way the case comes out. I mean, it seems that this is not necessarily an objection as you describe it. It's a statement of we're not liable because it was a corporation and we didn't sign any personal guarantees. I think, I mean, we would very briefly go back to the standards that were set out in the first document. But it looks like your client is trying to have his cake and eat it, too. If he wins, you know, he's not going to say, well, you know, the whole thing was just an empty exercise because I didn't agree to it. Well, he clearly made an objection. It's undisputed that the personal guarantee wasn't part of the complaint. He said something, but it's far down the slippery slope from George Day and Andrews and first options and all the rest. It's our feeling that it's not particularly given the standards and first options that require some clarity on this. We think it's striking that the response brief from the appellants, if you look at it, every single case they cite is a labor case other than two cases. One is first options, and the other one is the Andrews case, both of which we think are very similar to ours, in which an individual objected and was then. Similar but different. The language is different. We think it's a difference that doesn't get to a slippery slope, particularly if you look further on paragraph two of the answer. It says respondents herein refers, subject to paragraph one above, the term respondents refers to corporate respondents. So there are several places, not just one, where they say that they acted only in a corporate capacity, that they're referring to themselves only in a corporate capacity, and that they didn't enter into an agreement. I don't know how much more clear they could have been if. Well, yes, you do. And if you had been handling this, you'd have done it much differently. All lawyers like to say that, but I don't know whether that's in this case. I think it's more than adequate. Lawyers were involved in this, were they not? They were. And we think that they adequately made the point, particularly before a body, that they are going to have to be. And it's so clear that here we are in the Ninth Circuit arguing about it. Well, it was clear to Judge Ilston. And I should say, finally, with regard to the standard of review, we would view those as being factual matters, which under first options should be reviewed under a clearly erroneous standard. And we believe that some deference is due to Judge Ilston in that regard. Under first options, are we on Tier 2 or Tier 3? Because it makes a difference in terms of what your presumption is. If we're on Tier 3, then there has to be clear evidence of an intent to give up the jurisdictional question, whereas it's reversed if you're on Tier 2. So what's your position as to where we are on first options? I believe we're under Tier 3, and I need to look at my first options here. I mean, there's a difference where you have somebody who's not signed an agreement to arbitrate. And if there's any ambiguity or lack of clarity, there's no presumption, unlike the labor cases, which are the only ones really cited by the other side. Where you already have an agreement, and the question is? Where you already have an agreement, and you have parties. I mean, that's what's happened in George Day. The agreement had expired, and they were trying to get out of it here. They never signed the agreement, and it's in a commercial context, and not one where you have a competing labor policy that favors arbitration. All right. Thank you. Thank you, Your Honor. Thank you, counsel. Do you have any response? We'll allow you to make it. Come forward. May I please, the Court, who spent a substantial amount of time looking at the alleged objection that was raised in the answering statement, there's another part of the answering statement I would like the Court to consider, and that is paragraphs 4A through 4E. Hang on a second. 4A through 4E. Yes, Your Honor. Page 47 of the excerpt of record? Yes, Your Honor. In that, in those subparagraphs, Mr. Cain's lawyer sets out an elaborate series of affirmative defenses, approximately 13, everything from mistake of law, mistake of fact, unconscionability, waiver, estoppel, everything that you would expect in a case like this except lack of jurisdiction, lack of power, lack of authority. Again, Mr. Cain was ably represented, as Mr. Coleman, my able adversary, just said a moment ago, ably represented in the arbitration. Archie Robinson knew how to raise a jurisdictional issue. He didn't do it in the affirmative defenses. That's because Mr. Cain wanted this issue decided on the merits. Thank you. Thank you, counsel. The case just argued is order submitted. We appreciate your input.
judges: Schroeder, Trott, Feess